WADDELL & Co. v. UNITED STATES (No. 1245).[1]

TAM O'SHANTER STONES FOR POLISHING.

The merchandise, it is conceded, is like that considered in Waddell & Co. v. United States (3 Ct. Cust. Appls., 406; T. D. 32989). The uncertainty in the evidence in the present case as to just how these stones were produced makes strongly against the contention that they are waste, and this evidence does not differentiate this merchandise from that in the former case so as to warrant a different classification.

United States Court of Customs Appeals, March 25, 1914.

APPEAL from Board of United States General Appraisers, Abstract 33348 (T. D. 33695).

[Affirmed.]

Comstock & Washburn for appellants.

William L. Wemple, Assistant Attorney General (Charles E. McNabb, assistant attorney, of counsel; Thomas F. Tumulty, assistant attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:.

The merchandise in this case is invoiced as Tam O'Shanter stones, and the stones are called marble polishers. They were assessed for duty at 35 per centum ad valorem under paragraph 95 of the tariff act of 1909. The importers protested, claiming free entry under paragraph 626, or, if not so held, in the alternative that the stones were dutiable at 10 per cent ad valorem under paragraph 479 as waste not specially provided for, or at the same rate under paragraph 480 as a nonenumerated unmanufactured article. Upon hearing the Board of General Appraisers overruled the protest and, relying upon the authority of Waddell v. United States (3 Ct. Cust. Appls., 406; T. D. 32989), sustained the assessment.

In this court the claim for free entry is relied upon, but it is said by the importers that if it is not so held, paragraph 479, rather than paragraph 95, is applicable.

It is stipulated by counsel that the stones are used in their condition as imported for rubbing or smoothing marble or onyx preparatory to polishing it, and for no other purpose.

Exhibits, some 16 in number, represent the stones as imported. The importers' evidence (the Government introduced no testimony) shows that they are mined in Scotland.

A witness who had visited the mines upon one occasion testified that he saw similar stones produced in manner following, quoting his language:

A light charge of powder is used to blast the fine stone to get it out as large as they can get it. The endeavor is to get large stones, say, 14 to 18 inches square and about 2 to 6 inches thick. These small pieces come from breaking in the blasting and the sawing of the stone to get these large pieces. In getting the stones to the size they are sawed as they can make them, approximately 14 to 18 inches square, if they can

---

[1] Reported in T. D. 34323 (26 Treas. Dec., 545).

get them that large. These pieces (samples) come from both the edge where they are sawed off and from the blasting when the stone is broken up. The endeavor is to get as many as they can of the large pieces.

The testimony of the witness then took the following course:

Q. These are outside pieces or waste pieces?—A. Partly that. I can not say positively whether they came from the outside; they may be from the broken pieces. There is much refuse.

Q. Would the flat surface which you find on these stones indicate they would come from the outside of the large squares cut off?—A. They may and may not. That I am unable to testify to, not having been there when they came out.

Q. I think I understood you to say the merchandise was sawed?—A. The large stones are sawed; yes, sir.

Q. Is there anything else done to get them into the shape of these exhibits here?— A. No, no; not these. On the large stones the top surface is smoothed and the under surface is left as may be.

Q. The smoothing is made by machinery?—A. It is sawed; yes, sir; on the large stones I am speaking of.

Q. What I am interested in this moment is these exhibits. Take this one, for instance. Do you know how a thing like that is produced?—A. That evidently was sawed, but whether it came from a corner or not is more than I can state.

The exhibits are all small stones, varying in weight from 4 ounces to $2\frac{1}{4}$ pounds, and are of irregular shapes. Only one or two stones are of uniform thickness, about $1\frac{1}{4}$ inches, while the others vary from a thin edge to a maximum thickness of about 3 inches, depending upon the part of the stone measured. None are more than 7 inches in length, while the width is less. Some are flat upon two sides; some in the shape of right-angled triangles. One side of every piece has been sawed or artificially smoothed. All of them are of suitable size and shape to be held in the hand.

The testimony of importers, above quoted, leaves it entirely uncertain whether the exhibits are pieces that were sawed from the larger stones in the process of shaping them or are broken pieces resulting from the blasting that have themselves been sawed or artificially smoothed on one side. The witness says he can not tell, and we are equally uncertain. The appearance of the greater number of the exhibits suggests to us, however, the probability that they are the latter rather than the former.

The relevant part of paragraph 95 provides for—

Articles or wares composed wholly or in chief value of earthy or mineral substances.

And paragraph 626 gives free entry to—

Minerals, crude, or not advanced in value or condition by refining or grinding, or by other process of manufacture.

It is conceded that the merchandise is like that considered by the court in Waddell *v.* United States, *supra*, and used for the same purposes. In that case one sample only was shown. That was a small flat stone about two inches thick having the shape of a right-angled triangle, one edge and an obtuse end having been sawed and one side

bearing marks of a stone mason's chisel. The merchandise had been returned and assessed for duty as marble polishers under paragraph 95, above referred to. No parol testimony was offered in the case. The board sustained the assessment, which was upheld in this court. Free entry was claimed there, as here. Martin, Judge, speaking for the court in that case, said:

. The next question in the case, and the one chiefly relied upon by the importers, is the claim that the merchandise is free as crude minerals under paragraph 626 of the act. But the difficulty which the court encounters in coming to consider this contention is the fact that there is nothing in the record to explain the history and present condition of the article in controversy. Here is an article composed of stone, possessing an unusual shape such as suggests at once that it was fashioned by design, exactly adapted by form, size, and weight, as well as substance, to a certain well-known industrial purpose, bearing upon its sides the marks of saw and chisel, returned by the appraiser under a given name, to wit, a marble polisher, and apparently requiring no further treatment to fit it for use as such. In the total absence of other evidence in the case the court is unable to find from the facts stated that the appraiser was wrong in his return. It need hardly be observed that the presumption, both of law and fact, favors the correctness of the appraiser's finding and the collector's assessment.   *   *   * But in the present case an inspection of the official sample rather tends to incline the court to the view that the stone in question is the result of a manufacturing process, crude no doubt, but nevertheless actual, designed to produce a completed article suitable for a given use. It does not seem probable that the stones as imported are are in the condition in which they came from the quarry, but rather that their shape and size result from labor and design applied to that end. Particularly is this likely in view of the fact that the sample is but one of a considerable number of like stones possessing at least in general the same characteristics and bearing in common the name of marble polishers.

We agree with the board that the evidence and facts do not sufficiently differentiate the merchandise here from that in the Waddell case to authorize a different classification thereof.

In this case, as in that, however, the merchandise may have first appeared in the quarry, it has been processed or selected (whether any was selected the evidence does not make clear) for and is devoted and set apart to an especial use to which only it is applied. It takes the name of Tam O'Shanter stones or marble polishers and as such becomes a distinct article of commerce. It is composed of a mineral substance within the rule stated in United States v. Tamm (2 Ct. Cust. Appls., 425; T. D. 32173).

The uncertainty in the evidence as to just how these stones were produced, above pointed out, makes as strongly against the claim that they are dutiable as waste as that they are entitled to free entry, especially when confronted in the first instance by the presumed correctness of the collector's assessment under paragraph 95   To maintain their contention it was incumbent on the importers to establish more clearly just how the merchandise came to assume the particular condition typified by the samples.

The judgment of the Board of General Appraisers is *affirmed.*